## VICK v. HAYES.
### No. 5278.

Court of Appeal of Louisiana.  Second Circuit.

March 1, 1937.

H. D. Montgomery, of Monroe, for appellant.

M. C. Redmond, of Monroe, for appellee.

TALIAFERRO, Judge.

Sylvanus V. Vick, individually and as natural tutor of his three minor children, sues H. R. Hayes, operating under the trade-name of H. R. Hayes Lumber Company, to recover the value of four pool tables which were destroyed when the lower floor of the building wherein they were being used, then owned by defendant, was overflowed by the high water that inundated the city of West Monroe in the early part of 1932. The building was erected by Vick in the latter part of 1930. The material of which it was constructed was sold to him by defendant, to whom Vick mortgaged the building and lots whereon it was located to secure payment of the amount due for the material. He expected financial assistance from some source to clear the mortgage, but this failed to materialize. He purchased four pool tables at a cost of $500 and says he moved all of them into the building and then leased it to one Whitlock for $50 per month. He soon moved to Richland parish, and thereafter evinced little interest in the property. Before going away, he committed the property to the care of defendant with the understanding that defendant would collect and apply the rent on the mortgage debt against it. Rent collections were not good. Whitlock surrendered his lease and for a month or two the building was vacant. Defendant then intrusted the operation of the pool tables to one Kelly, under an agreement to split the gross income. This arrangement lasted until the lower floor of the building was covered by the 1932 overflow. Defendant foreclosed his mortgage and purchased the property at sheriff's sale on February 20, 1932. Three of the tables were in the building at that time. We are not convinced that the fourth table was there when defendant's agents began to look after it. The record leaves little doubt that defendant was hopeful of having the mortgage indebtedness against the building reduced by revenues, and for this reason endeavored to keep it tenanted and, in a manner, kept watch over the collection

of rents. Without the tables no one seems to have desired to lease the building. The mortgage did not include these tables.

The water was three feet deep in the building. It is safe to assume that it stood therein several weeks. When defendant realized the water would rise high enough to come into the building, he had scaffolds built therein two or two and one-half feet high on which the tables were placed. The water came over these scaffolds about one foot. Mr. Mitchell, defendant's then assistant manager, at the manager's suggestion, visited the building while the water was in it. He says the doors had been forced open and many of the window lights had been broken. He gives this description of the set-up within the building:

"The scaffolding was under water. The water was about 36 inches deep at least on the floor and these tables had been pushed off the scaffold. Part down in the water and others on scaffold."

The issues have been narrowed to the one question: Did defendant exercise the degree of care imposed on him by law to preserve from destruction the three tables? No other issue is discussed in his brief. The lower court resolved that question againt defendant and, we think, properly so.

Had all the tables remained on the scaffolds they would have been in water one foot deep. Tables of this character would have been materially damaged, if not ruined, by standing in this depth of water for several weeks. No effort was made to salvage the tables when Mr. Mitchell viewed them when in the water. All of them were not then off the scaffolds. Aside from these acts of omission, we think it was defendant's duty to have removed the tables to a place of safety as soon as it was known that the building would be overflowed. The effect of water and dampness to furniture of this character is well known to all. Even had the water not reached any of the tables, they would have suffered serious damage by remaining in the damp room over the water for several weeks, and possibly been so badly injured as to render them valueless.

The record does not disclose that plaintiff was advised of the danger to the tables from the water before the damage was done. He evidently assumed that defendant would exercise due care to protect the tables from destruction by the water.

The lower court fixed the value of the tables at $350. This valuation is not questioned here.

We think the judgment against defendant correct, and it is affirmed, with costs.